IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FAAUILA S. LEAENO; JERRY S. LEAENO; MAFUTAGA S. LEAENO; SUEVALE E. LEAENO; LEUEA P. PALEAFEI; AND RINEI S. PALEAFEI,<br><br>                Plaintiffs,<br><br>        vs.<br><br>JASON PISTOR; ALBERT BALASBAS; DENNIS AHN; MICHAEL W.K. HALL, STANLEY COLLINS, JR., all in individual capacities; and DOES 1-100,<br><br>                Defendants.<br>_____ | CIVIL NO. 05-00781 SOM/LEK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        This case arises out of the warrantless arrest of

Plaintiff Jerry S. Leaeno.  Defendants Jason Pistor, Albert

Balasbas, Dennis Ahn, Michael W.K. Hall, and Stanley Collins,

Jr., all officers with the Honolulu Police Department, arrested

Jerry S. Leaeno at the house he lived in.  Although the officers

had no warrant to arrest Jerry Leaeno, they claim that Plaintiff

Faauila S. Leaeno, who is both Jerry Leaeno's mother and one of

the owners of the house, consented to their entry into the house

to arrest Jerry Leaeno.  Faauila Leaeno, however, denies having

given such consent.  The other Plaintiffs named in this action

are Suevale E. Leaeno, who is Jerry Leaeno's father and the co-

owner of the house, and Mafutaga S. Leaeno, Leuea P. Paleafei, and Rinei S. Paleafei, relatives also living in the house whose rooms were briefly entered by the officers.

Plaintiffs' First Amended Complaint asserts claims under 42 U.S.C. § 1983 based on alleged violations of the Fourth Amendment of the United States Constitution. <u>See</u> Count I, First Amended Complaint (July 24, 2006). In Count I, Plaintiffs assert four specific Fourth Amendment violations: 1) unlawful arrest of Jerry Leaeno; 2) unlawful entry into and search of the home; 3) unlawful entry into and search of rooms in the home; and 4) unlawful entry into the curtilage of the home.[1]

Defendants now move for summary judgment, arguing that they have qualified immunity with respect to Plaintiffs' claims. Defendants' motion is granted in part and denied in part. Because all Plaintiffs except Jerry Leaeno lack standing to assert a claim based on Jerry Leaeno's arrest, the court dismisses the warrantless arrest claims of all Plaintiffs except Jerry Leaeno.

To the extent Officers Pistor, Ahn, and Balasbas seek a determination that they are qualifiedly immune with respect to both Jerry Leaeno's warrantless arrest claim and all Plaintiffs' claims concerning entry into the house, the motion is denied.

---

[1]Count I is the only substantive claim, as Count II only seeks punitive damages.

2

There is a question of fact as to whether Officers Pistor, Ahn, and Balasbas heard Faauila Leaeno grant or deny Pistor's request for consent to enter the house. If they heard her deny the request and nevertheless entered the house and arrested Jerry Leaeno, they violated the Fourth Amendment. By contrast, Officers Hall and Collins are granted summary judgment on Jerry Leaeno's warrantless arrest claim and on all Plaintiffs' claims concerning entry into the house. They have qualified immunity with respect to that arrest claim because it is undisputed that, instead of hearing Faauila Leaeno say anything about whether officers could enter, they entered based on their visual observation of other officers' entry and their consequent assumption that consent to enter had been given.

With respect to the claims based on the entry into and search of the various rooms of the house, summary judgment is granted to Officers Balasbas, Hall, and Collins, as the record indicates that only Officers Pistor and/or Ahn entered the rooms of the house. Questions of fact preclude summary judgment on the claims by Faauila and Suevale Leaeno, as owners of the house, against Officers Pistor and or Ahn for warrantless entry into their relatives' rooms. Each of the other Plaintiffs may maintain only claims based on the entry by Officers Pistor and/or Ahn into that Plaintiff's own room, not the rooms of other persons in the house.

3

Finally, Plaintiffs allege that Defendants violated § 1983 by entering the curtilage of the house.  There is undisputed evidence that, when Officers Ahn, Balasbas, Hall, and Collins got to the property, the gate was already open.  Those officers have qualified immunity with respect to Plaintiffs' claim that a Fourth Amendment violation occurred when the officers entered through the gate to approach the house.  An issue of fact precludes summary judgment with respect to curtilage claims against Officer Pistor, who may have opened the gate.  The court also denies summary judgment to the extent Plaintiffs assert that Officers Ahn and Hall violated § 1983 by going to the back door of the house.

II.      SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006); Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly

4

admissible evidence may be considered in deciding a motion for summary judgment." Miller, 454 F.3d at 988.

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party bears the burden of proof at trial, the moving party carries its initial burden on a motion for summary judgment when it "'come[s] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.'" Id. (quoting

C.A.R. Trans. Brokerage Co. v. Darden Rest., 213 F.3d 474, 480 (9th Cir. 2000)).

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

III.    BACKGROUND FACTS.

It is undisputed that, on March 19, 2005, the mother of Jerry Leaeno's child told the police that, on March 18, 2005, Jerry Leaeno had been verbally abusive and that he had thrown a full beer can at her, striking her on the back of her neck.  It is also undisputed that Officer Hunter Ah Loo made an incident report, characterizing Jerry Leaeno's actions as an abuse of a family or household member in violation of section 709-906 of Hawaii Revised Statutes.  See Honolulu Police Department Incident Report No. 05-113-035.

On March 20, 2005, Officers Pistor, Ahn, Balasbas, Hall, and Collins went to Jerry Leaeno's residence to arrest him in connection with the alleged March 18 incident.  See Declaration of Jason Pistor (Jan. 30, 2007) ¶¶ 5, 7-9; Declaration of Dennis Ahn (Jan. 30, 2007) ¶ 4; Declaration of Albert Balasbas (Jan. 31, 2007) ¶ 4; Declaration of Michael W.K. Hall (Jan 29, 2007) ¶¶ 5-6; Declaration of Stanley Collins, Jr., (Jan. 31, 2007) ¶ 5.  Officer Pistor initially approached the

door by himself.  See Supplemental Declaration of Jason Pistor
(submitted at the hearing) ¶ 6 ("[a]s best I can recall, no other
officers were present when I made my initial approach to the
front door of the house"); Supp. Decl. of Dennis Ahn (March 18,
2006) ¶ 3 ("To the best of my recollection, when I arrived at 91-
604 Kilipoe Street on March 20, 2005, the gate to the property
was already open."); Supplemental Declaration of Michael W.K.
Hall (March 19, 2007) ¶ 3 (same); Supplemental Decl. of Stanley
Collins, Jr. (March 18, 2007) ¶ 3 (same).

    According to Jerry Leaeno, to get to the front door,
the officers had to open a chain-link gate to the driveway, as he
was the last household resident to have returned home that
evening and had closed the gate behind him.  Declaration of Jerry
S. Leaeno (Feb. 20, 2007) ¶¶ 7-9; Ex. 4 to Plaintiffs' Concise
Statement (poor quality picture of the gate).  Jerry Leaeno
describes the gate as secured with a "tight latch" that required
"a great deal of force" to open.  (Supplemental) Declaration of
Jerry Leaeno (March 18, 2007) ¶ 3.  By contrast, Officer Pistor
says that, when he arrived at the home, "there was no gate acting
as an obstacle to the front door."  Supp. Pistor Decl. ¶ 3.
Officer Pistor says that the "gate was not a factor in [his]
approach to the front door, and [that] there were no locks or
difficult obstacles preventing [him] from getting to the front
door of the house."  Id. ¶ 4.

At approximately 10:45 p.m., Officer Pistor, possibly joined by Officer Ahn, knocked on the front door of 91-604 Kilipoe Street. <u>See</u> Pistor Decl. ¶ 9.  Faauila and Suevale Leaeno, the owners of 91-604 Kilipoe Street, heard voices calling for their son, Jerry Leaeno, and went outside.  Declaration of Faauila S. Leaeno (Feb. 19, 2007) ¶¶ 2-5; Declaration of Suevale E. Leaeno (Feb. 19, 2007) ¶¶ 2-5.  Officer Pistor and possibly Officer Ahn were just outside their front door.  <u>See</u> Defendants' Concise Statement of Facts ¶ 7 ("Officer Pistor knocked on the front door . . . with Officer Dennis Ahn"); F. Leaeno Decl. ¶ 6; S. Leano Decl. ¶¶ 6-7; Pistor Decl. ¶¶ 9-10 (indicating that he knocked on the door with Officer Ahn); <u>but</u> <u>see</u> Ahn Decl. ¶ 6-7 (indicating that, when he arrived at the house, he walked to the rear of it with Officer Hall and that, when Officer Ahn later walked back to the front of the house, Officer Ahn saw "officers" speaking with a female).

Officer Balasbas says he arrived at the Leaeno house after other officers had begun speaking with Faauila Leaeno.  <u>See</u> Balasbas Decl. ¶ 6 (indicating that, upon his arrival, he saw Officer Pistor and another officer talking with Faauila and Suevale Leaeno).  It is unclear when Officers Hall and Collins arrived at the scene, as their declarations merely indicate that, shortly after arriving, they saw officers talking with Faauila and Suevale Leaeno.  <u>See</u> Hall Decl. ¶ 7; Collins Decl. ¶ 6.

8

Faauila Leaeno told Officer Pistor that Jerry Leaeno was not home.  Officer Pistor asked Faauila Leaeno whether police could enter the home to confirm that.  Pistor Decl. ¶¶ 10-11; F. Leaeno Decl. ¶ 10.  Officer Pistor says that Faauila Leaeno gave police verbal consent to enter and search the home for Jerry Leaeno.  Pistor Decl. ¶ 12.  Faauila Leaeno denies having given such consent, asserting instead that she told the officers "no" and said that she "would go inside and look for Jerry." F. Leaeno Decl. ¶ 11.  Faauila Leaeno says she neither waved the officers into the house nor gave them a friendly smile.  Id. ¶ 33.

Officer Balasbas corroborates Officer Pistor's version of what happened at the door, saying that he "heard the . . . adult female verbally give permission to enter their property . . . ." Balasbas Decl. ¶ 7.  Officer Ahn also corroborates Officer Pistor's depiction of events at the door, saying that he saw the female make "a hand gesture in the manner of waving officers through the door." Ahn Decl. ¶ 7.  Officer Hall says that Officer Pistor told him that the "man and woman had consented to entry to the premises." Hall Decl. ¶ 8.  Officer Collins says that he watched the officers go into the house, and that it appeared that they had consent because they went in without resistance.  Collins Decl. ¶ 7.

Suevale Leaeno, however, corroborates his wife's version of what happened at the door, saying that Faauila Leaeno

told the officers that they could not go into the home to look for Jerry Leaeno and that, when she herself went back into the house, the police officers followed her without an invitation. S. Leaeno Decl. ¶¶ 9-10; <u>accord</u> F. Leaeno Decl. ¶ 12.

Faauila Leaeno says that the officers ordered her to open two shut doors, which she did out of fear that the officers would break them down. <u>Id.</u> ¶¶ 15-20. The Leaenos say that the officers then went into their daughter Mafutaga Leano's room, pushing on a door that was ajar. <u>Id.</u> ¶ 21-22; M. Leaeno Decl. ¶¶ 3-4. Mafutaga Leaeno says that she pushed the door shut, only to have the same police officer open it. M. Leaeno Decl. ¶¶ 5-6. Faauila Leaeno says that the officers proceeded to the room occupied by her other daughter, Rinei Paleafei, and son-in-law, Leuea Paleafei. Fauuila says she knocked on the door and that, as soon as Rinei Paleafei cracked open the door, an officer pushed the door open and put his head into the room. F. Leaeno Decl. ¶¶ 24-26.

The officers found Jerry Leaeno in the last room and promptly arrested him. F. Leaeno Decl. ¶¶ 27-31; Pistor Decl. ¶¶ 17-20.

Officer Hall says that he stayed outside, in the back of the house, until he was notified that other officers had found Jerry Leaeno, only then entering the house to provide backup. Hall Decl. ¶¶ 9-10, 14. Officer Hall says that he entered the

house "based on [his] understanding that consent had been given to enter the premises." Id. ¶ 13.

Officer Balasbas says that, while other officers went inside to look for Jerry Leaeno, he too remained outside until he heard the other officers say that they had found Jerry Leaeno, only then entering the house to provide backup. Balasbas Decl. ¶¶ 7-8. Balasbas says he entered the house based on a belief that Faauila Leaeno had consented to the officers' entry into the house, as he says that he heard her give such permission to the officers. Id. ¶ 7.

Officer Collins says that he saw the officers enter the house without physical resistance and that it appeared to him that consent to enter the house had been given. See Collins Decl. ¶ 7. Officer Collins says that he entered the house with Officer Balasbas to provide backup to the officers arresting Jerry Leaeno. Id. ¶¶ 8, 10.

IV.    ANALYSIS.

In Count I of the Complaint, Plaintiffs assert four constitutional violations. The officers argue that they have qualified immunity with respect to all claims. Their motion for summary judgment is granted in part and denied in part.

"Qualified immunity . . . shields § 1983 defendants 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"
Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)
(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see
also San Jose Charter of the Hells Angels Motorcycle Club v. City
of San Jose, 402 F.3d 962, 971 (9th Cir. 2005).  The qualified
immunity doctrine protects government officials from their
exercise of poor judgment, and fails to protect only those who
are "plainly incompetent or those who knowingly violate the law."
Malley v. Briggs, 475 U.S. 335, 341 (1986).  The purpose of
qualified immunity is to protect officials from undue
interference with their duties and from potentially disabling
threats of liability.  Sinaloa Lake Owners Ass'n v. City of Simi
Valley, 70 F.3d 1095, 1098 (9th Cir. 1994).  The Supreme Court
has therefore stated that qualified immunity is an entitlement
not to stand trial or face the other burdens of litigation.
Saucier v. Katz, 533 U.S. 194, 200 (2001).

        In Saucier, the Court held that the qualified immunity
analysis involves a two-step process.  In the first step of the
analysis, the court must determine whether the facts alleged,
taken in the light most favorable to the party asserting the
injury, show that a particular defendant's conduct violated a
constitutional right.  If no constitutional right would have been
violated by the alleged actions, a defendant has qualified
immunity.  Id. at 201.

If the plaintiff sufficiently alleges a constitutional violation, then the court must engage in the second inquiry, determining whether the violated right was "clearly established." Id.  If the law did not put the defendant on notice that his or her conduct would clearly be unlawful, the official has qualified immunity with respect to the claim.  Id.; see also San Jose Charter of the Hells Angels Motorcycle Club, 402 F.3d at 971; Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004). The second prong of the qualified immunity analysis examines "whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights."  Devereaux, 263 F.3d at 1074.  "This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case."  San Jose Charter of the Hells Angels Motorcycle Club, 402 F.3d at 971.

This court must be mindful that qualified immunity is an immunity from litigation and that genuine issues of material fact do not necessarily preclude the court from determining that officers have qualified immunity from their actions.  See Saucier, 533 U.S. 202.  Instead, even if a question of fact exists, this court may find an officer qualifiedly immune when the court examines the facts in the light most favorable to a plaintiff and determines that those facts do not demonstrate a clearly established violation of that plaintiff's constitutional

13

rights.  Of course, when a clearly established violation of constitutional rights is demonstrated by facts examined in the light most favorable to a plaintiff, the court should deny an officer's summary judgment motion and allow a jury to resolve the factual question of what happened.  See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) ("[t]he district court erred in its analysis of the reasonableness inquiry of the second Saucier prong because it failed to view the evidence in the light most favorable to the plaintiff"); Tangaro v. Botelho, 2006 WL 354975, *2 (D. Haw. Feb. 14, 2006) (determining that an officer was not entitled to qualified immunity when facts, examined in the light most favorable to the plaintiff, demonstrated that, under the plaintiff's version of the facts, the plaintiff's clearly established constitutional rights were violated).

A.   Claims Based on the Arrest of Jerry Leaeno.

All Plaintiffs claim damages for the warrantless arrest of Jerry Leaeno.  All Plaintiffs except for Jerry Leaeno lack standing to assert § 1983 claims against the officers for the warrantless arrest of Jerry Leaeno.  Such a claim is personal to Jerry Leaeno.  See Bhatti v. County of Sacramento, 2006 WL 1551332, *4 (E.D. Cal. June 1, 2006) ("Plaintiff bases his § 1983 claim on alleged violations of his Fourth and Fourteenth Amendment rights.  With regard to the Fourth Amendment, plaintiff alleges an unreasonable seizure and detention of his son, Ammon.

14

However, plaintiff does not have standing to claim a violation of his son's Fourth Amendment right to be free of unreasonable seizure and therefore has no claim based on this theory." (citing Alderman v. United States, 394 U.S. 165, 174 (1969)). Accordingly, to the extent the Complaint asserts § 1983 claims by Plaintiffs other than Jerry Leaeno based on the warrantless arrest of Jerry Leaeno, those claims are dismissed.

> 1.   Officers Pistor, Ahn, and Balasbas are Not Entitled to Summary Judgment on Jerry Leaeno's Warrantless Arrest Claim.

The parties dispute whether Faauila Leaeno consented to the officers' entry into the house to arrest Jerry Leaeno.  In examining whether the officers have qualified immunity with respect to this claim, the court first examines whether the facts alleged, taken in the light most favorable to Jerry Leaeno, show that the officers' conduct violated a constitutional right.  See Saucier, 533 U.S. at 201.  Jerry Leaeno alleges that officers entered his house without a warrant or consent to arrest him.[2]  See Complaint ¶ 8.  These allegations, if true, would be a violation of Jerry Leaeno's Fourth Amendment rights.  See Payton v. New York, 445 U.S. 573, 576 (1980) ("We . . . hold that the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment . . . ,

---

[2]No party is asserting that the entry into the house was justified by exigent circumstances.

prohibits the police from making a warrantless and nonconsensual
entry into a suspect's home in order to make a routine felony
arrest.").

Because Jerry Leaeno sufficiently alleges a
constitutional violation, the court moves to the second stage of
the inquiry, determining whether the violated right was "clearly
established." See Saucier, 533 U.S. at 201.  Officers Pistor and
Balasbas say that they heard Faauila Leaeno give the officers
consent to enter the house.  Officer Ahn or some other officer
was apparently standing with Officer Pistor at the time of the
alleged consent.  Faauila Leaeno says that she told the officers
that they could not go into the house to look for Jerry Leaeno.
Under these circumstances, a question of fact exists as to
whether the officers received consent to enter the house.
Assuming for purposes of this summary judgment motion that
consent was lacking, any officer who had reason to know that
consent had not been unequivocally given to enter the house is
not qualifiedly immune with respect to Jerry Leaeno's warrantless
arrest claim.  The law was clearly established at the time of
Jerry Leaeno's arrest in 2005 that, under normal circumstances,
an officer could not constitutionally enter a person's house to
make an arrest without a warrant, consent, or exigent
circumstances.  See Payton, 445 U.S. at 576; see also Tower v.
Leslie-Brown, 326 F.3d 290, 296 (1st Cir. 2003) ("Certainly, the

16

unlawfulness of entering a person's home to effectuate a
warrantless arrest in the absence of exigent circumstances was
clearly established at the time of Tower's arrest in January
2001.").

Assuming Faauila Leaeno did not consent to the
officers' entry into the home, the court examines which officers
violated clearly established rights.  There is no question that,
if Faauila Leaeno's statements are true, Officer Pistor violated
such rights.  It is less clear which of the other officers knew
or had reason to know that she had allegedly not given consent.
Officer Pistor says Officer Ahn was with him when he knocked on
the door, so there is a factual basis for putting Officer Ahn in
the same position as Officer Pistor.  Similarly, Officer Balasbas
claims to have heard Faauila Leaeno give consent.  If, as she
asserts, she did not so consent, then Officer Balasbas was in a
position to know that, putting him in a situation similar to that
of Officer Ahn.

The officers' declarations create some confusion, as
Officer Ahn says he saw "officers" speaking with Faauila Leaeno
at the front door.  Officer Pistor was clearly one of those
"officers," but it is not clear who else was with Officer Pistor,
as Officer Ahn and Officer Balasbas say that, shortly after they
arrived, Officer Pistor and another officer were already speaking
with Faauila Leaeno.  See Ahn Decl. ¶ 7; Balasbas Decl. ¶ 6.  It

17

appears, however, that Officer Ahn was with Officer Pistor at the door, as Officer Ahn states that he "recall[s]" Faauila Leaeno using a set of keys to open up doors.  See Ahn Decl. ¶ 9. Officer Ahn would have no such recollection if he had not entered the house with Officer Pistor.

The question is therefore whether Officer Hall or Officer Collins might have been among the "officers" who spoke with or heard Faauila Leaeno at her front door.  While this is a theoretical possibility, given the vagueness of the declarations, the court resolves this by applying the parties' burdens of proof.  Officer Hall and Officer Collins both say that, shortly after arriving on the scene, they saw Officer Pistor talking with Faauila Leaeno.  Neither says that he was in a position to hear what was being said.  See Hall Decl. ¶ 7; Collins Decl. ¶ 6. Plaintiffs present no evidence showing how they would meet their burden at trial of establishing either Officer Hall's or Officer's Collin's liability for Jerry Leaeno's warrantless arrest.  At the hearing, Plaintiffs speculated that all of the officers may have heard Faauila Leaeno tell the officers that they could not enter the house.  However, such speculation is insufficient to raise a genuine issue of fact sufficient to defeat Officer Hall's and Officer Collin's motion for summary judgment in light of those officers' declarations indicating that they merely saw other officers conversing with Faauila Leaeno.

18

See <u>Witherow v. Paff</u>, 52 F.3d 264, 266 (9th Cir. 1995) (a party's speculation that something "may" have happened is insufficient to raise a genuine issue of fact).

      At trial, Plaintiffs would have, at best, only the statements by Officers Hall and Collins that they saw officers speaking with Faauila Leaeno.  This would not be enough to support a jury's finding that there was a preponderance of the evidence placing either Officer Hall or Officer Collins at the front door or in a position to have heard the conversation between Officer Pistor and Faauila Leaeno.  This is not an issue of credibility, as Plaintiffs are not claiming that all five officers were at the front door while Faauila Leaeno allegedly denied entry.  Under these circumstances, there is no genuine factual dispute that neither Officer Hall nor Officer Collins heard Faauila Leaeno allegedly deny entry.

      Officers Hall and Collins were indisputably outside the house when other officers entered the house.  They entered the home only after other officers found Jerry Leaeno in his bedroom. Even assuming that Faauila Leaeno told some officers that they could not enter the house, Officers Hall and Collins, knowing that other officers had entered and having no reason to think consent to enter had been denied, did not violate any clearly established constitutional right with respect to Jerry Leaeno's warrantless arrest.

It is undisputed that whichever officers spoke with Faauila Leaeno at the front door entered the house without physical resistance visible to someone standing outside the house.  See Collins Decl. ¶ 7 ("Officer Pistor and the other officer entered the premises via the front door without resistance.  It appeared to me that they had consent to enter the premises.").  Faauila Leaeno only alleges that, when she "turned around and went into the house," the "two police officers . . . barged past [her]."  F. Leaeno Decl. ¶ 12.  Suevale Leaeno similarly says that, when his "wife went into our house, the police officers . . . followed her uninvited."  S. Leaeno Decl. ¶ 10.  No conduct is alleged from which an officer who did not hear Faauila Leaeno would have thought that consent had been denied.

Because the facts would objectively indicate to officers not hearing Faauila Leaeno's alleged denial of consent that such consent had been given, no clearly established violation of the Fourth Amendment has been shown by Officer Hall's or Officer Collins's entry into the house.  See Georgia v. Randolph, 126 S. Ct. 1515, 1520 (2006) ("To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of a person's house as unreasonable per se, one jealously and carefully drawn exception recognizes the validity of searches with the voluntary consent of an individual possessing authority." (quotations and

citations omitted)); <u>Illinois v. Rodriquez</u>, 497 U.S. 177, 181
(1990) ("The Fourth Amendment generally prohibits the warrantless
entry of a person's home, whether to make an arrest or to search
for specific objects.  The prohibition does not apply, however,
to situations in which voluntary consent has been obtained,
either from the individual whose property is searched, or from a
third party who possesses common authority over the premises."
(citations omitted)); <u>Donovan v. Dewey</u>, 452 U.S. 594, 599 n.6
(1981) ("Absent consent or exigent circumstances, a private home
may not be entered to conduct a search or effect an arrest
without a warrant."); <u>United States v. One (1) 1984 Mercedes
Benz, Vehicle Identification No. WDBBA45AOEA005388</u>, 673 F. Supp.
387, 393 (D. Haw. 1987) (warrantless arrest following a
consensual entry into an apartment did not violate the Fourth
Amendment).  Officers Hall and Collins have qualified immunity
with respect to Jerry Leaeno's warrantless arrest claim.

>            2.    Hawaii Law Does Not Provide Immunity for
>                  <u>Officers Pistor, Ahn, and Balasbas.</u>

Assuming Faauila Leaeno did not consent to the
officers' entry into the home, Officers Pistor, Ahn, and Balasbas
argue that they are entitled to qualified immunity under Hawaii
law.  Hawaii law provides that an officer arresting a person for
a violation of section 709-906 of Hawaii Revised Statutes (abuse
of family or household member) "shall not be subject to any civil

. . . liability; provided that the police officer acts in good faith, upon reasonable belief, and does not exercise unreasonable force . . . ."  Haw. Rev. Stat. § 709-906(8).  The court is not convinced that section 709-906(8) shields Officers Pistor, Ahn, and Balasbas from § 1983 liability for a violation of a federal constitutional right.  The officers have not explained how a state law can relieve them of liability under a federal law.  See Gonzales v. Raich, 545 U.S. 1, 29 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

Nor have the officers shown that section 709-906(8) is even applicable.  That section provides immunity from liability with respect to claims arising out of an arrest of a person for abuse of a household or family member.  By its terms, section 709-906(8) does not provide for absolute immunity.  Instead, the immunity is conditioned on an officer's acting "in good faith" and "upon a reasonable belief."  Section 709-906(8) certainly provides immunity from false arrest and false imprisonment claims when an officer reasonably believes that a person abused a household or family member.  This case, however, does not involve a claim that the arrest for the violation of 709-906 was unfounded, as it is undisputed that the officers had an incident report indicating that Jerry Leaeno had violated section 709-906.  Instead, this case challenges the process the officers followed

22

in arresting Jerry Leaeno.  The officers cite no authority indicating that the immunity granted to officers in section 709-906(8) applies to claims involving the manner of arrest, as opposed to the substantive basis for the arrest.

Moreover, if Faauila Leaeno told the officers that they could not enter the house to arrest Jerry Leaeno, any officer who did indeed enter the house cannot be said to have acted "in good faith."  The law is clearly established that a warrantless entry into a house to make an arrest violates the Fourth Amendment.

Although government officials such as police officers are entitled to qualified immunity when they reasonably rely on a duly enacted statute (even if that statute is later held to be unconstitutional), such immunity does not extend to "official conduct which is patently violative of fundamental constitutional principles" or to enforcement of a statute "in a manner which a reasonable officer would recognize exceeds the bounds of the [statute]." Grossman v. City of Portland, 33 F.3d 1200, 1209-10 (9th Cir. 1994).  The warrantless and allegedly nonconsensual entry into Jerry Leaeno's home to arrest him for a violation of section 709-906 of the Hawaii Revised Statutes without exigent circumstances is patently violative of fundamental constitutional principles and would be something that reasonable officers would recognize as exceeding the bounds of that statute.  See Payton, 445 U.S. at 576.  Accordingly, section 709-906(8) does not, on

23

the present record, confer qualified immunity on Officers Pistor, Ahn, and Balasbas with respect to Jerry Leaeno's warrantless arrest claim.

      B.   Claims Based on the Officers' Warrantless Entry Into and Search of the House.

To the extent Plaintiffs challenge the officers' warrantless entry into and search of the house, the court grants summary judgment to Officers Hall and Collins, but denies summary judgment to Officers Pistor, Ahn, and Balasbas.  In so ruling, the court adopts the analysis set forth above with respect to the Jerry Leaeno's warrantless arrest claim.

      C.   Claims Based on the Officers' Warrantless Entry into and Search of the Rooms in the House.

It is undisputed that only Officer Pistor and/or Officer Ahn entered into and searched the rooms of the house. Accordingly, to the extent Plaintiffs allege an unconstitutional search of the rooms by Officers Balasbas, Hall, and Collins, summary judgment is granted to those officers, as they did not enter into or search the rooms, meaning that Plaintiffs have failed to even allege a constitutional violation against them with respect to the room entry claims for purposes of the Saucier analysis.  For the reasons set forth above with respect to the warrantless arrest claim, summary judgment is denied as to the warrantless entry and search of the rooms claims against officers Pistor and Ahn.

However, Mafutaga Leaeno, having asserted no privacy interest or rights with respect to the room occupied by Rinei and Leuea Paleafei or by Jerry Leaeno, may not recover for any officer's entry into Rinei and Leuea Paleafei's room or Jerry Leaeno's room.  Similarly, Rinei and Leuea Paleafei may not recover for any officer's entry into the rooms occupied by Mafutaga Leaeno or Jerry Leaeno, and Jerry Leaeno may not recover for entry into his sisters' rooms.

D.   Claims Based on the Officers Entry Into the Curtilage of the Property.

Plaintiffs say that the chain-link gate running the length of the carport to their property was shut when the officers came to the property.  Plaintiffs say that the officers violated the Fourth Amendment when they entered the curtilage of the house by opening the gate to knock on the front door.  At the hearing, Plaintiffs clarified that this claim is being asserted only by Faauila and Suevale Leaeno, who were allegedly startled and/or frightened when they heard the officers in the curtilage of the property.

The Fourth Amendment applies not only to a house, but also to the curtilage of the house.  See United States v. Dunn, 480 U.S. 294, 300 (1987).  What qualifies as curtilage of a house is determined by an examination of four factors: "the proximity of the area claimed to be curtilage to the home, whether the area

25

is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and steps taken by the resident to protect the area from observation by people passing by." Id. A question of fact exists on the present record as to whether the gate marked protected curtilage of the house. The Leaenos describe the see-through, chain-link gate as approximately four feet high with a latch, but not a lock. The Leaenos say that the latch is difficult to open and that, on the night of Jerry Leaeno's arrest, the gate was shut. These bare-bone facts are insufficient to allow the court to determine whether the gate was a barrier to entry.

Even assuming that the gate marked the curtilage of the house that could not be entered without consent, Officers Ahn, Balasbas, Hall, and Collins are qualifiedly immune from Plaintiffs' claim of unlawful entry through the gate. The only facts submitted to the court indicate that Officer Pistor initially entered the property alone through the gate. There is a question of fact as to whether Officer Pistor had to open the gate, but the only evidence in the record provides that Officers Ahn, Balasbas, Hall, and Collins all found the gate already unlatched and open upon their arrival. Plaintiffs submit no evidence indicating that Officers Ahn, Balasbas, Hall, and Collins knew that the gate had allegedly been opened by Officer Pistor. An officer faced with an open gate could reasonably

26

assume that no Fourth Amendment right would be violated by walking through the gate to the front door.  Only the claim against Officer Pistor remains in issue insofar as the entry through the gate is concerned.

Faauila and Suevale Leaeno also appear to be claiming unlawful entry into the curtilage of the house based on the officers' presence in the back of the house.  Officers Ahn and Hall say that they entered the property and went to the house's back door to prevent any escape attempt by Jerry Leaeno.  On the present record, the court cannot tell whether the area by the back door of the property fell within the Fourth Amendment's protection.  That claim against Officers Ahn and Hall remains for further adjudication.

V.      CONCLUSION.

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.

The claims remaining for adjudication are: 1) the claim of Jerry Leaeno against Officers Pistor, Ahn, and Balasbas for arresting him in his house without a warrant, consent, or exigent circumstance; 2) the claims against Officers Pistor, Ahn, and Balasbas for their alleged entry into the house without a warrant, consent, or exigent circumstance; 3) the claims against Officers Pistor and Ahn for their alleged entry into and search of Plaintiffs' respective rooms without a warrant, consent, or

exigent circumstance; 4) the claims of Faauila and Suevale Leaeno
against Officer Pistor for allegedly entering the curtilage of
the property by opening the gate and walking to the front door;
and 5) the claims of Faauila and Suevale Leaeno against Officers
Ahn and Hall for allegedly entering the curtilage of the property
by walking around to the back of the house.

Summary judgment is granted to Defendants on all other
claims.  No claims remain against Officer Collins.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 28, 2007.


/s/ Susan Oki Mollway
_____
Susan Oki Mollway
United States District Judge


**Leaeno, et. al. v. Pistor, et al.**, Civ. No. 05-00781 SOM/KSC; ORDER GRANTING
IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

28